UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN T. CALLAHAN | ) | CASE NO. 3:10CV1638 |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Susan T. Callahan ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice:

## I. PROCEDURAL HISTORY

Plaintiff filed previous applications for DIB and SSI in 2002, alleging disability since June 29, 1980, her date of birth. ECF Dkt. #11-2 at 10. An Administrative Law Judge ("ALJ") denied Plaintiff's applications, finding that while Plaintiff had severe mental impairments, which he did not specifically identify, she could nevertheless perform work existing in significant numbers in the national economy. ECF Dkt. #11-4 at 8. The ALJ did review and mention Listing 12.02 for organic mental disorders, Listing 12.04 for affective disorders, Listing 12.05 for mental retardation, and Listing 12.08 for personality disorders from the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") in his analysis. *Id.* at 8-9. The ALJ found that Plaintiff could perform work that:

> does not impose a closely regimented pace of production. Close regimentation of work activity is a consequence of certain operational demands of a rapid pace or functioning within close tolerances. This might be required when there is a high value placed on a product, the raw materials, the pace of production, or the equipment employed. Close and critical supervision in this context would produce unacceptable stress. This work is different from jobs that allow the employee to determine the timing of different work activities, or to determine the pace of work.
>
> The claimant is also unable to address work that imposes intense contact with the public or strangers. Such a position exposes a person to the emotional challenges of strangers who may have a personal response that disturbs sensitive employees. Customers with emergencies or extreme dissatisfaction with service or products can display emotions that make public contact too uncomfortable for the claimant.

*Id*. at 9. Based upon vocational expert testimony and the RFC that he determined, the ALJ found that Plaintiff could perform a significant number of jobs existing in the national economy, including the jobs of commercial cleaner, hand trimmer of plastic parts, and a laundry folder. *Id*. at 11.

While Plaintiff appealed the ALJ's 2006 decision to the Appeals Council, she filed a new application for DIB and SSI alleging disability beginning June 29, 1980. ECF Dkt. #11-5 at 2. She also filed applications for Child's Insurance Benefits ("CIB"), seeking benefits on the earning records of her mother and father and alleging disability again since birth. ECF Dkt. #11-8 at 16-22.

On October 23, 2006, the SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt. #11-5 at 6-28. Plaintiff filed a request for hearing before the ALJ and a hearing was held on April 7, 2009. ECF Dkt. #11-3; ECF Dkt. #11-6 at 2-12; ECF Dkt. #11-7. Plaintiff, represented by counsel, testified at the hearing, and a vocational expert ("VE") testified as well. ECF Dkt. #11-6 at 2. The ALJ not only held a hearing on Plaintiff's unfavorable determinations on her SSI and DIB applications, but he escalated her CIB applications in the same hearing and associated them with her SSI and DIB determinations. ECF Dkt. #11-2 at 11.

On April 28, 2009, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled. ECF Dkt. #11-2 at 10-21. Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied the request for review. *Id*. at 2-9.

On July 27, 2010, Plaintiff filed the instant suit and Defendant thereafter filed an answer. ECF Dkt. #s 1, 10. On December 8, 2010, Plaintiff filed a brief on the merits, and on February 28, 2011, Defendant filed a brief on the merits. ECF Dkt. #s 12, 17. On March 14, 2011, Plaintiff filed

a reply brief. ECF Dkt. #18.

## II.  **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, the ALJ reviewed the prior ALJ's determination and denied Plaintiff's request to reopen that final decision. ECF Dkt. #11-2 at 10-11. Plaintiff had argued that her recent diagnosis of Asperger's Syndrome created a context in which observations of her lifelong disability could be observed, which constituted new and material evidence relating to the prior determination. *Id*. at 11. The ALJ denied this request, finding that no new and material evidence related to the June 2, 2006 ALJ decision. *Id*.

However, the ALJ found that since the time period between the prior ALJ's decision and the final date of his decision, Plaintiff had new diagnoses which created a change in circumstances that relieved the ALJ from the final decision of the prior ALJ pursuant to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997).

The ALJ found that Plaintiff suffered from obesity with complaints of ankle pain, Asperger's Syndrome, and depression, which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). ECF Dkt. #11-2 at 15. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 26.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, which included the following limitations: lifting, carrying, pushing and pulling up to twenty pounds occasionally and ten pounds frequently; sitting for up to six hours per eight-hour workday; and standing and/or walking for up to two hours per workday. ECF Dkt. #11-2 at 16. The ALJ further found that Plaintiff could understand and remember both simple and complex instructions, she could concentrate for two-hour periods over an eight-hour day on simple tasks, and she needed to avoid work with production quotas. *Id*. He further found that Plaintiff could interact appropriately with co-workers and supervisors and adapt to simple changes in the work setting, but should avoid work requiring frequent contact with the public. *Id*.

Based on the record and the VE's testimony, the ALJ determined that Plaintiff had the RFC to work in jobs existing in significant numbers in the national economy, such as a machine operator,

inspector and cleaner. Tr. at 33.

The ALJ also denied Plaintiff's CIB applications based upon the June 2, 2006 unfavorable decision, finding that "as long as that decision is in effect the claimant is not able to establish that she has been *continuously* disabled since before age 22, i.e. since before June 29, 2002." ECF Dkt. #11-2 at 11. The ALJ indicated that he would issue separate decisions as to each application. *Id.*

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

Plaintiff raises a number of alleged errors committed by the ALJ. The Court takes Plaintiff's assertions of error out of order and addresses them in the chronological order of the required sequential steps for evaluating entitlement to DIB and SSI.

### A. DRUMMOND V. COMMISSIONER OF SOCIAL SECURITY

Plaintiff asserts that the ALJ violated *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and Administrative Ruling ("AR") 98-4(6) with respect to her mental limitations. ECF Dkt. #12 at 10. Plaintiff contends that substantial evidence did not support the ALJ's conclusion that the "new" diagnoses of Asperger's Syndrome and depression relieved him of the binding effect of the prior ALJ's determination of Plaintiff's mental limitations. *Id.*

In *Drummond*, the Sixth Circuit Court of Appeals relied upon prior decisions in holding that the Commissioner is bound by a prior final determination concerning a claimant's entitlement to benefits absent a change in circumstances. 126 F.3d at 842, citing *Lively v. Sec'y of Health & Human Servs*., 820 F.2d 1391 (4th Cir. 1987), *Dennard v. Sec'y of Health & Human Servs*., 907 F.2d 598, 600 (6th Cir. 1990) and *Senters v. Sec'y of Health & Human Servs*., No. 90-1-5966, 1992 WL 78102 (6th Cir. Apr. 17, 1991)(per curiam). The Court held that "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata."

*Id*. at 843.

AR 98-4(6) applied *Drummond* to disability cases in the Circuit at the administrative levels. AR 98-4(6). It states in relevant part that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*Id.*

Plaintiff recites a statement made by the ALJ relating to her Asperger's Syndrome diagnosis to assert that the diagnosis of Asperger's Syndrome did not constitute new and material evidence that would justify departing from the prior ALJ's findings. In discussing the diagnosis of Asperger's Syndrome, the ALJ stated:

> I find that since the June 2, 2006, unfavorable decision the record indicates the medical providers have indicated there is a question of Asperger's, there is possible Asperger's, there is probable variant of Asperger's, or that there is a diagnosis of Asperger's. I find there is a strong suspicion or even a conclusion by medical providers that the claimant's complaints of learning difficulties and difficulty with people are consistent with a diagnosis of Asperger's Syndrome. I find that this new diagnosis for essentially the same symptoms or complaints is sufficient to relieve me and the claimant from the binding effect of the residual functional capacity in the June 2, 2006, unfavorable decision. This diagnosis could provide a larger context in which to view the claimant's complaints. I find that this is not enough to warrant re-opening of the June 2, 2006, unfavorable decision, but is enough to relieve me and the claimant from the binding effect of the residual functional capacity in that decision.

ECF Dkt. #11-2 at 12. Plaintiff contends that this paragraph means that the new diagnosis "merely aided in the understanding of the 'same symptoms or complaints'" from the prior determination and thus no change in circumstances had occurred which warranted a disregarding of the prior ALJ's determination of her mental limitations.

This Court disagrees. The ALJ specifically stated that "since the June 2, 2006, unfavorable decision," a diagnosis of Asperger's Syndrome had arisen. ECF Dkt. #11-2 at 12. In stating that the new Asperger's diagnosis "for essentially the same symptoms or complaints" allowed the ALJ to break from the prior decision, the ALJ was not referring to the symptoms or complaints from the previously-adjudicated period, but to Plaintiff's current complaints of learning difficulties and

difficulties with people to those medical providers who diagnosed her with Asperger's Syndrome. Further, while the ALJ acknowledged a 2002 psychological/learning capacities evaluation by Dr. Budzenski, a psychologist for the Bureau of Vocational Rehabilitation who opined that Plaintiff had symptoms of Asperger's Syndrome, he relied mainly upon medical records documenting evaluation and treatment after the previously-adjudicated period, including the records of a neurologist who in November 2007 noted that Plaintiff had features of Asperger's Syndrome. ECF Dkt. #11-2 at 17-19. Thus, most of the evidence that the current ALJ relied upon dates from October 2006 onward, which therefore constitutes new and material evidence.

Plaintiff also asserts that the ALJ's acknowledgment of her depression as a severe impairment is not a changed circumstance or new and material evidence relieving the ALJ from the prior ALJ's mental limitations for her. ECF Dkt. #12 at 10-11. She contends that her condition did not improve or change with the addition of another "severe" impairment. *Id.* at 11. The prior ALJ's decision mentioned depression, but stated that although the Bureau of Vocational Rehabilitation psychologist noted that she exhibited symptoms of depression, she believed that Plaintiff exaggerated these symptoms. ECF Dkt. #11-4 at 9. The current ALJ also reviewed Dr. Budzenski's opinion, but the bulk of the records that he reviewed were more recent medical records, including those of Plaintiff's treating physician, her treating psychiatrist since 2007, and state agency clinicians. ECF Dkt. #11-2 at 18-19. Thus, because most of the evidence that the current ALJ relied upon is dated after the prior determination, it does constitute new and material evidence.

For these reasons, the Court finds that the ALJ properly found that he was not bound by the prior ALJ determination because new and material evidence existed which warranted a deviation. Accordingly, the ALJ was not bound by the specific elements of the prior ALJ's RFC or mental RFC.

### B. TREATING PHYSICIAN'S OPINION

Plaintiff also asserts that the ALJ failed to apply the treating physician rule and evaluate the opinions of Dr. Klein, her treating family physician. ECF Dkt. #12 at 14. Specifically, Plaintiff contends that the ALJ failed to evaluate Dr. Klein's March 22, 2007 opinions and her July 2007 opinions. ECF Dkt. #12 at 16.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96.2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544, quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

While finding that an ALJ must abide by the mandatory procedural requirements of 20 C.F.R. § 404.1527(d) by giving controlling weight to qualifying opinions of treating sources, the *Wilson* Court left open the question of whether a violation of § 1527(d)(2) could constitute harmless error. The *Wilson* Court indicated that harmless error could occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." 378 F.3d at 547. The Court further indicated that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the opinion of the treating physician. *Id*. Finally, the *Wilso*n Court noted that harmless error may be found if "the Commissioner has met the goal of § 1527(d)(2)– the provision of the procedural safeguard of reasons— even though she has not complied with the terms of the regulation." *Id.*

-8-

The record contains two documents dated March 22, 2007 from Dr. Klein. The first is a note indicating that Plaintiff had presented for a follow-up appointment and for a Bureau of Disability determination. ECF Dkt. #11-14 at 24. Dr. Klein noted that Plaintiff was receiving help from the Bureau of Vocational Rehabilitation and she had worked for a period of time doing data entry, but she could not make the required quotas, so she was let go. *Id*. Dr. Klein opined that Plaintiff had no limitation on her ability to sit, she could stand and/or walk for a couple of hours at a time, she could not lift over thirty pounds, and she could perform office work, but could not perform at the same speed as other workers and may be off task sometimes due to concentration problems. *Id.*

The second document dated March 22, 2007 is a form in which Dr. Klein set forth her diagnoses for Plaintiff as a motor and mental developmental delay since childhood, depression, morbid obesity and attention deficit/hyperactivity disorder ("ADHD"). ECF Dkt. #11-14 at 25. Dr. Klein noted clinical findings supporting her diagnoses and noted that Plaintiff was taking a medication unrelated to her diagnosed conditions. *Id.* at 26. As to a description of limitations, Dr. Klein stated that limitations were addressed in her note, apparently referring to the March 22, 2007 note discussed above. *Id.*

The Court finds that the ALJ did not state the weight that he attributed to the opinions of Dr. Klein. However, it does not appear that the ALJ rejected Dr. Klein's March 22, 2007 opinions, but rather that he adopted them. The ALJ reviewed Dr. Klein's March 22, 2007 opinions in his decision, indicating that Dr. Klein stated that Plaintiff was able to perform some office work despite her developmental delays. ECF Dkt. #11-2 at 17; ECF Dkt. #11-14 at 24. The ALJ agreed with Dr. Klein's March 22, 2007 diagnoses, finding that Plaintiff's depression, obesity and Asperger's syndrome were severe impairments. Compare ECF Dkt. #11-2 at 15 with ECF Dkt. 11-14 at 25-26, 44. He also adopted Dr. Klein's opinion as to Plaintiff's limitations as Dr. Klein found that Plaintiff could not lift more than thirty pounds and could not perform heavy lifting and the ALJ limited her to lifting up to ten pounds frequently and twenty pounds occasionally. Compare ECF Dkt. #11-2 at 16 with ECF Dkt. #11-14 at 24. The ALJ also adopted Dr. Klein's limitations as to Plaintiff's abilities to sit, stand and walk, as Dr. Klein found Plaintiff able to stand and/or walk up to two hours

per eight-hour workday day and sit virtually without restriction, and the ALJ limited Plaintiff to standing and walking two hours of an eight-hour workday and to sitting six hours of a workday. *Id.* Dr. Klein had also opined that Plaintiff could not perform tasks at the same speed as others, and the ALJ found that Plaintiff could not perform work requiring production quotas. *Id.* Dr. Klein opined that Plaintiff had some concentration and stress difficulties and may get off task sometimes, and the ALJ limited Plaintiff to simple tasks requiring concentration for two hour periods over an eight-hour day. *Id.*

Accordingly, while the ALJ failed to state the weight that he attributed to Dr. Klein's March 22, 2007 opinions, there is no showing that the ALJ rejected or discounted these opinions, and in fact, it appears that his RFC was consistent with these opinions. Thus, the Court finds that the ALJ's failure to articulate the weight that he gave to Dr. Klein's March 22, 2007 opinions constitutes harmless error and no purpose would be served for remanding the case on this issue. *See Bass v. McMahon*, 499 F.3d 506, 510-511 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 547.

Moreover, the Court finds harmless error in the ALJ's failure to address the July 17, 2007 attending physician statement or the ALJ's statement that no treating physician opined that Plaintiff was disabled or unable to work. The July 17, 2007 document is a one-page form entitled "AETNA Handicapped Child/Disabled Student Attending Physician Statement." ECF Dkt. #11-14 at 24. On this form, Dr. Klein identified the name of the employer of Plaintiff's mother, Plaintiff's mother's name, and Plaintiff's name as the dependent. *Id*. She listed her diagnoses for Plaintiff as developmental disorder, ADHD, delay in motor and mental, and depression. *Id*. For the degree of disability, Dr. Klein wrote "difficulty with keeping job." *Id.* She noted that the conditions had existed since early childhood, the conditions are expected to last "long-term," and listed her prognosis as "fair." *Id*. Dr. Klein further opined that Plaintiff was not capable of self-support because she was "unable to hold job due to disability." *Id*. Dr. Klein indicated that Plaintiff was not able to perform any type of work because she "has difficulty with standing on feet for long time, jobs requiring concentration, math and some interpersonal communication." *Id*.

"The determination of disability is [ultimately] the prerogative of the[Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting

-10-

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). Thus, the ALJ was not obligated to give any special deference to Dr. Klein's finding of disability. Moreover, Dr. Klein merely states that her statement of disability is based upon "psychological testing" and she provides no elaboration as to clinical or objective evidence supporting that finding. In addition, it is difficult to reconcile Dr. Klein's statement of disability on this form when less than four months earlier she opined that Plaintiff could work with limitations and she provided specific limitations that the ALJ adopted. Compare ECF Dkt. #11-14 at 24 with ECF Dkt. #11-14 at 44. An ALJ must attribute controlling weight to the opinion of a treating source if he finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the record." *Wilson*, 378 F.3d at 544, quoting 20 C.F.R. § 404.1527(d)(2). Dr. Klein's disability statement is inconsistent with her own prior opinion and lacks support with her prior medical findings, and the findings of other medical sources, including the opinions of agency psychologists Edwards and Kelly as described below.

In sum, although the ALJ should have more specifically addressed Dr. Klein's opinions and articulated the weight that he gave to them, the Court finds that this failure constitutes harmless error. The ALJ discussed Dr. Klein's March 22, 2007 opinion, adopted it, and found it consistent with the other evidence of record. ECF Dkt. #11-2 at 16. As to Dr. Klein's July 19, 2007 statement, it was a conclusory statement of disability that lacked support and consistency even with Dr. Klein's own detailed and supported opinion issued four months earlier. Moreover, substantial evidence supported the ALJ's findings as he cited to and relied upon Dr. Klein's March 22, 2007 opinion, Plaintiff's own testimony that she believed that she could work, and the findings of state agency reviewing psychologists Edwards and Kelly who found slight to mild impairments in daily living activities, social functioning, relating to co-workers, maintaining concentration, persistence and pace, and withstanding pressures and stress. ECF Dkt. #11-2 at 16-20; ECF Dkt. #11-3 at 24; .

For these reasons, the Court finds that the ALJ's failure to articulate the weight given to Dr. Klein's opinions constitutes harmless error.

## **C**.     **ALJ'S USE OF TERM "SUBSTANTIAL EVIDENCE"**

Plaintiff also asserts that the ALJ applied an erroneous legal standard in making his determination. ECF Dkt. #12 at 12-13. Plaintiff contends that the ALJ used the "substantial evidence" standard and not the "preponderance of the evidence" standard in finding that she was not entitled to social security benefits. *Id*. Plaintiff cites to four instances in the ALJ's decision where he used the phrase "substantial evidence." *Id*.

"It is well established that the ALJ must determine whether a claimant has proven his or her disability by a preponderance of the evidence." *Hendrix v. Comm'r of Soc. Sec*., No. 97-3637, 166 F.3d 1214(Table), 1998 WL 833781, at *3 (Nov. 19, 1998), unpublished, citing *Vaughn v. Finch*, 431 F.2d 997, 999 (6th Cir. 1970). The substantial evidence standard is the standard used by the Court to review the ALJ's findings. 42 U.S.C. § 405(g).

The ALJ did use the phrase "substantial medical evidence of record" three times in his decision and he used the phrase "substantial evidence of record" once. ECF Dkt. #11-2 at 17 ("The substantial medical evidence of record indicates that the claimant has a long history of developmental delay in both motor and mental."); ECF Dkt. #11-12 at 19 ("Finally, the undersigned notes, overall the substantial medical evidence of record indicates the claimant has mild developmental delay in both motor and mental skills"); ECF Dkt. 311-2 at 19 ("These opinions are weighed as non-examining expert sources, however they are found persuasive as they are consistent with the substantial medical evidence of record"); ECF Dkt. #11-2 at 20 ("The opinion of Bruce Kelly, M.Ed. and the state agency examining clinician is also granted significant weight as he thoroughly evaluated the claimant and his opinion is also consistent with the substantial evidence of record."). However, the context in which he used these phrases does not demonstrate that he used the substantial evidence standard of judicial review in determining whether Plaintiff was disabled. From the context of these four statements made by the ALJ, it appears that he used the phraseology to mean that the majority of the records or most of the records supported the findings that he had made. Moreover, even if the ALJ had used an improper standard of law, Plaintiff fails to show how this error prejudiced her, especially since the substantial evidence of review standard is an even

lesser burden than a preponderance of the evidence standard of review. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971)(substantial evidence is more than a scintilla of evidence, but less than a preponderance); *see also Harris v. Comm'r of Soc. Sec.*, 2011 WL 167279, at *3 (S.D. Ohio Jan. 19, 2011)(upholding Magistrate Judge's finding that ALJ's use of substantial evidence standard rather than preponderance of the evidence standard was harmless in part because claimant failed to explain how it prejudiced her).

### D. HYPOTHETICAL QUESTION TO THE VE

Finally, Plaintiff asserts that the ALJ's hypothetical persons to the VE were incorrect and incomplete because he failed to include the limitation that she could adapt to only simple changes in the work setting. ECF Dkt. #12 at 6-7. Plaintiff contends that because the ALJ included this limitation in the mental RFC for Plaintiff in his decision but did not expressly include this limitation in his hypothetical persons to the VE, the ALJ could not rely upon the VE's testimony as to the number of jobs available to the hypothetical persons propounded to him by the ALJ. *Id.*

Plaintiff is correct that the ALJ did not include this specific limitation in the hypothetical persons that he presented to the VE as the ALJ presented to the VE only the specific mental limitations of work requiring no production quotas and no frequent contact with the public. ECF Dkt. #11-3 at 27. However, the Court finds that this omission was harmless error and remand of this case for the ALJ's failure to specifically include this limitation is not necessary.

The Sixth Circuit has made it clear that courts should not remand a social security case where "remand would be an idle and useless formality." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir.2009), citing *Wilson*, 378 F.3d at 547, quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969). Here, remand is unnecessary because the ALJ limited Plaintiff to unskilled work in his decision and relied upon the VE's testimony of the significant number of unskilled jobs that a hypothetical person with Plaintiff's RFC could perform.

SSR 85-15 provides that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-5. SSR 96-9p also notes that "competitive,

-13-

remunerative, unskilled work" requires, *inter alia*, "[d]ealing with changes in a routine work setting." SSR 96-9p. By limiting Plaintiff to unskilled work, the ALJ and the VE addressed the limitation of the ability to adapt to simple changes in the work setting. In formulating his RFC, the ALJ noted that Plaintiff was able to work on a near constant basis during the review period and had never been fired. ECF Dkt. #11-2 at 17. The ALJ also relied upon the opinion of treating physician Dr. Klein who indicated that Plaintiff could still perform some office work despite her physical limitations, her occasional difficulties with concentration, and her need to have a low-stress job. *Id.* at 19. The ALJ also gave significant weight to the opinion of Dr. Kelly, the agency consultative examiner, who indicated that Plaintiff had a history of satisfactory work adjustment and found that her abilities to withstand stress and pressure associated with day to day activity to be only slightly impaired. *Id*. at 18. Based upon his supported RFC which showed the ability to adapt to changes in the workplace, and the limitation to unskilled work, the Court finds that the ALJ's failure to specifically incorporate the limitation to only simple changes in the work setting is a harmless error in this case.

## VI.  CONCLUSION

For the foregoing reasons, the AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.


DATE: October 26, 2011              */s/George J. Limbert*
                                    GEORGE J. LIMBERT
                                    UNITED STATES MAGISTRATE JUDGE